IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CT-3079-D

| | |
|---|---|
| DONZA HARTSFIELD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>OFFICER C. WILLIAMS, et al., )<br>)<br>Defendants. ) | **ORDER** |

Donza Hartsfield ("Hartsfield" or "plaintiff"), a former inmate proceeding pro se, filed this action under 42 U.S.C. § 1983 [D.E. 1]. On February 18, 2014, the court reviewed the action pursuant to 28 U.S.C. § 1915A and allowed Hartsfield to proceed with his excessive-force claim against defendant Williams [D.E. 16]. On March 17, 2014, defendant answered the complaint [D.E. 21]. On March 20, 2014, Magistrate Judge William A. Webb issued a scheduling order [D.E. 22]. On July 18, 2014, defendant moved for summary judgment [D.E. 28]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Hartsfield about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 29].

On August 26, 2014, the court granted plaintiff's motions to amend his complaint and for discovery, dismissed plaintiff's claim against defendant Harrison, and directed Williams to produce the requested evidence on or before September 12, 2014 [D.E. 32]. On September 12, 2014, Williams filed the additional evidence with the court and served a copy on Hartsfield [D.E. 33–34]. On September 30, 2014, Hartsfield responded in opposition to the motion for summary judgment

[D.E. 35–36].[1] As explained below, the court grants defendant's motion for summary judgment and denies Hartsfield's cross-motion for summary judgment.

I.

On February 9, 2013, Hartsfield and several other inmates were in a transfer area at the Wake County Detention Center, "handcuffed, chained, and leg shackled . . . [waiting] for departure to the Dept. of Correction." Compl. [D.E. 1] 3; see Williams Aff. [D.E. 28-2] ¶¶ 3–4. "While waiting patiently, there was 2 female[] . . . inmates sitting, fully dressed waiting for processing in a steel closed-in[] cell with plexi-glass window." Compl. 3. "Somebody made a 'remark'" to one of the female inmates which defendant Williams attributed to Hartsfield. Id.; Williams Aff. ¶ 4. Hartsfield denied the accusation, and Williams instructed Hartsfield to sit down on a metal bench. Compl. 3; Williams Aff. ¶ 4. Hartsfield refused the instruction and, when Williams repeated the instruction, Hartsfield refused and used an expletive. Compl. 3 (stating Hartsfield informed Williams he could not sit "because of medical reasons"); Williams Aff. ¶ 5. Thereafter, Hartsfield and Williams were involved in a use-of-force incident, the severity of which the parties dispute. Hartsfield alleges that Williams

> then charged at [Hartsfield] full force and closed hand punched [Hartsfield] on [his] left-side half in front of mouth and jaw. As [Hartsfield] was going backwards because of the punch, force, and leg shackles, [Williams] deliberately slammed [Hartsfield] first on the metal bench . . . and the second time he slammed [Hartsfield] on the concrete floor . . . . [Williams] then grabbed [Hartsfield] by [his] shirt while [he] was lying down on the floor, defenseless, and began to choke [Hartsfield] by dragging [him] from one side of the room to the other side.

Compl. 3–4.

---

[1] Hartsfield's response appears to contain a cross-motion for summary judgment. See [D.E. 36] 1. Accordingly, the court will treat the filing as both a response in opposition and a cross-motion for summary judgment.

2

Williams states that he "used an open-handed 'soft hand' technique" in an attempt to gain control of Hartsfield and escort him away from the other inmates to the holding cell. Williams Aff. ¶ 6. "As [Williams] reached for [Hartsfield] with [his] open hand, inmate Hartsfield made a very quick movement whereby he quickly jerked his shoulder away from me. This jerking move on Hartsfield's part, caused [Williams's] open hand to come in contact with Hartsfield's left cheek." Id. ¶ 7. Hartsfield continued to resist, and Williams then took Hartsfield as "gently as possible" to the floor. Id.

Williams sought assistance from another officer (Wright). Compl. 4; Williams Aff. ¶ 7. Hartsfield alleges that Wright intervened to stop the assault. Compl. 4. Wright placed Hartsfield in a holding cell and summoned medical attention. Id.; see Williams Aff. ¶ 7. Hartsfield alleges that he was spitting blood out of his mouth. Compl. 4. A nurse examined Hartsfield and concluded that he did not have any visible injuries. Compl. 4; Williams Aff. ¶ 9; [D.E. 33] 5 (nursing note indicating that Hartsfield "pushed nurses hand refusing care . . . despite encouragement" and was "[n]oted to be agitated"). Hartsfield alleges that a sergeant met with him and Wright "and agreed that Off. Williams used excessive force." Compl. 4. Hartsfield then gave a "rushed" written statement and returned to the transfer area for transport to Craven Correctional Institution. Id.; see Williams Aff. ¶¶ 9–10.

Defendants have submitted a video of the incident, which shows Williams looking at Hartsfield (who is standing) and engaging in a discussion with him. [D.E. 34] at 10:25:25.300–10:25:39.456.[2] The video also shows that Williams walked over to Hartsfield with

---

[2] The video does not contain any sound. Hartsfield complains about "a strip on the DVD/CD that is (not visible) due to unknown reason" and requests "the entirety of the surveillance video tape[.]" [D.E. 36-1] 1. On the contrary, the video is very clear, and the court denies Hartsfield's request. Cf. McMillian v. Wake Cnty. Sheriff's Dep't, 399 F. App'x 824, 828–29 (4th Cir. 2010).

3

an open hand, not a closed fist, and that Hartsfield pulled away from Williams. See id. at 10:25:39.925–10:25:43.722. Another officer (presumably Wright) immediately rushed over and within seconds the second officer appears to have control of Hartsfield and places Hartsfield (who can be seen walking) into a holding cell. See id. at 10:25:40.925–10:26:07.815. Williams then walks back over to the other inmates and returns to his duties of handcuffing and shackling the inmates in preparation for transport. See id. at 10:26:07.956–10:29:03.254.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011).

The Eighth Amendment protects inmates from cruel and unusual punishment. See Wilson v. Seiter, 501 U.S. 294, 296–97 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

4

To succeed on an excessive-force claim under the Eighth Amendment, a prisoner must establish that "the officials acted with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quotation and alteration omitted); see, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994). "The core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (quotations omitted); see United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010); Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987). However:

> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. . . . [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive[-]force claim.

Wilkins, 559 U.S. at 37–38 (citations and quotations omitted); see Hudson, 503 U.S. at 9–10; Whitley v. Albers, 475 U.S. 312, 319 (1986); Gore, 592 F.3d at 494. "Thus, the determination of whether an Eighth Amendment violation has occurred through the use of excessive force in the prison context 'turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm.'" Gore, 592 F.3d at 494 (quoting Whitley, 475 U.S. at 320–21).

Hartsfield disagrees with Williams's version of the incident, but the video supports Williams's version and not Hartsfield's version. Hartsfield's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." Scott, 550 U.S. at 379–80. Although the court may not "reject a plaintiff's account on summary judgment" if the video

5

evidence merely "offers *some* support for a governmental officer's version of events," "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" Witt v. W. Va. State Police, Troop 2, 633 F.3d 272, 276 (4th Cir. 2011) (emphasis and alterations in original) (quoting and citing Scott, 550 U.S. at 378, 380). To the extent that Williams did strike Hartsfield in his face beyond that be seen on the video, no reasonable jury could find that Williams used force "of a sort repugnant to the conscience of mankind," or that Williams was acting "maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37–38 (quoting Hudson, 503 U.S. at 7, 9). Likewise, no reasonable jury could find that Williams had a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297. In fact, the record demonstrates that any force used on Hartsfield was in a good-faith effort to maintain or restore discipline. Thus, the court grants Williams's motion for summary judgment and denies Hartsfield's motion for summary judgment.

II.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 28] and DENIES plaintiff's cross-motion for summary judgment [D.E. 36] and request for additional discovery [D.E. 36-1]. The clerk shall close the case.

SO ORDERED. This 16 day of February 2015.

JAMES C. DEVER III
Chief United States District Judge

6